Good morning, your honors. May it please the court, I am Stephen Johnson, representing third-party plaintiff and appellant Renee Tillman. I was taken as I was sitting listening to the preceding arguments at how fact-intensive the other cases appeared to be. This case is not fact-intensive. It involves a very straightforward issue of law. Whenever I prepare for an argument like this and I look back at briefs that were written 18 months ago, I think to myself, how might I have presented things differently? How might we more carefully focus the issue? And I'll try to limit my comments this morning to those issues. The first thing I'm most taken by is the fact that we were not singular enough, none of the parties were, in focusing on the jurisdictional issue that stands at the heart of this case. The trial court's finding was that she felt she did not have the power to conduct further proceedings simply because the arbitrator had dismissed the appeal. She said it was dismissed, I don't have the power, I know Renee Tillman cannot afford the arbitration, I've made a finding that she has no ability to... I'm sorry, you're talking about a district judge now? Yes. She is a district judge? Yes. Okay, go ahead. The trial court, yeah. So she made a finding on that subject and she said at page four and five of the excerpt, you will find that she said under the life scan, she did not have the power to conduct further proceedings. And she said, therefore, I have to dismiss the case. Well, whether power means jurisdiction or not jurisdiction doesn't really matter, but why was she wrong? Well, she was wrong because that is not the law. There has never been a court that has found that when an arbitration is dismissed for the reason of nonpayment, there is an absolute bar that extends to the trial court that prohibits the trial court from conducting a trial on the merits. All you have to do is look at the Sink case and it's evident. We can talk about distinguishing one case from another. Essentially, here there were three key cases. There was LifeScan, there's Sink, and then there's Williams. In LifeScan, the court was silent as to the question as to what happened with further proceedings. What happened in LifeScan was simply that the court said, well, I'm going to order the arbitrator to make this party pay. And the Court of Appeals said, no, you can't do that. You can't give directives to the arbitrator. And I have no disagreement with that point. In Sink, what happened was the employer sought to enforce the arbitration provision. The employer then failed to pay. The court said, all right. The trial court said we'll proceed with the hearing and the trial here in court. And the employer said, well, now we'll pay for it. And the court said, no, you've lost the right to arbitrate. But in that case, the arbitration was terminated for nonpayment and the trial court proceeded. That's because there was a default by the party that had asked for the arbitration to begin with, right? Well, that was certainly the factual component of that case, yes. And there's a provision, as I understand it, of the Section 3, is it, of the FAA that specifically deals with the question of default? That is correct, Your Honors. But there was no finding by this arbitrator in this case, in our case, that Ms. Tillman was responsible for the payment of the failure to pay. In our excerpt of record, we make clear and we point out what happened at the arbitration. The arbitrator specifically, just like in LifeScan, the arbitrator asked Rheingold if they wished to pay. Rheingold didn't pay. There was a hearing set to determine who was responsible to pay. And the arbitrator said, I can't even have that hearing if you don't pay. If there isn't a payment by somebody— There should be a dispute about whether that happened or not, as I understand it. Could you tell me where in the record that exists? What? The statement that I won't even tell you, I won't even consider who should pay because you're not paying me. The hearings, the excerpt of records regarding the arbitrator's findings appear at 62 and 66 of the excerpt of the record. You're not going to tell me where it is? Pardon me? So you're not telling me where it is in the record, in the excerpts? Okay. It's at 62 and 66. 62 of the record? Excerpt of record, 62 and 66. Go ahead. There was a specific request for a hearing made to the arbitrator that the arbitrator conduct a hearing allocating fees, and the arbitrator indicated that he wouldn't do it. I think there's more on that, actually. Just go ahead with your argument. In any event, there were several issues. Remember, the other point we make in our opening brief with citations to the record was that the arbitrator had already found liability. The arbitrator had already determined that damages existed in the form of the fees that my client had incurred as a result of the Rheingold firm's mistake. The arbitrator had already made those express findings. The only thing that was left to do is to calculate the damages, and we asked the arbitrator to order Rheingold to pay the costs in light of the fact that they were inevitably going to be required to pay for costs anyway. And that specific request is referenced in the briefs. It's referenced in the excerpts, and the arbitrator declined to do that. In Williams, it's a distinguishable case in the sense that what happened in Williams, of course, is that the arbitrator made a specific decision and found that it was a negotiated arbitration provision. And so what the trial court was really asked to do in Williams was nothing more than to reverse a determination that was made by the arbitrator. Here, there was no determination by the arbitrator. The only tribunal that ever made a determination as to whether Ms. Tillman could afford the fee was the trial court, and she found she could not afford the fee, and she dismissed the case anyway. That's why this case is so important. This is the most clear example of a bright-line rule you will ever find. I mean, I gather that if the arbitrator had said specifically, I am not going, Ms. Tillman is supposed to pay this money. I am not going to order Reingold to pay it. She has to pay it. That would change everything in the case? It could affect the case. And you don't think that's essentially what he did? No, he didn't do that. He was very careful not to do it. The rulings he made, the findings he made are very specific. We specifically requested briefing. At the excerpt, you will see the specific order he made. He says there was a motion before me to determine responsibility for fees. I'm not ruling on that. Where does he say that? It wasn't in 62 or 66. I've just looked at those. All he said in 62 and 66 is that he doesn't intend to decide the motion for interim relief. Oh, I guess that's what you're referring to, asking if the arbitrator directs a claimant. Right. If the request, he's going to suspend the hearing. So what can a district court do at that point? The district court can remand the case to trial and continue on with trial. And that's what she should have done. Because she found that at that point my client could not preserve her rights. But the district court has said the arbitrator has to decide the motion? No. And she can't do that because of life scan. She can't give orders to the arbitrator to do something the arbitrator wouldn't do. But what she can do is say, just like in life scan, she can say to Rheingold, you had an arbitration provision, you're the ones who wanted the arbitration, the arbitrator asked you whether you would pay when Renee didn't. You didn't do it. You lose. We're back in court. And we're going to trial. But that's sort of an unsecretary because they don't have any obligation to pay unless ordered to pay. And they were in order to pay. Well, in life scan, the court asked life scan to pay. The court didn't say that they had an obligation, but they asked them whether they would like to. And when they didn't, they lost their right to arbitrate. I thought they did say life scan is to pay. And then it's when life scan didn't pay that the whole issue arose. But there was an order that life scan pay. I'll defer to your reading, but my reading of the case was that they gave, they asked life scan if they would like to pay. I didn't see an order by the arbitrator that life scan pay. Okay. Thank you. If you want to reserve any time, you'll have 30 seconds. Thank you. Good morning, Your Honors. Stephen Kane on behalf of the appellee at the Ryan Gold firm. Excuse me for my voice this morning. Interesting that the initiation of the argument was that there are no disputed facts and this is a legal question and then most of the argument involved all the underlying facts, which is the court undoubtedly knows, would have been the sole obligation of the arbitrator to decide, meaning who pays. But he did say I'm not going to decide the motion to have Ryan Gold pay. I may have now found that he did say it. So what do you do with it? Context is important, Your Honor. I don't think that statement is being presented correctly. I just read it. What do you mean? Well, he says he's not going to decide the request, but what is the request? And I would direct the court, as a good example of this, to page 453 of the excerpts of the record. This is the letter which is capsulating the request by counsel, not a motion, just a request by counsel. He called it a motion in his letter. I'm sorry? He called it a motion in his letter, but go ahead. I'll call it a motion, but an attorney letter is not a motion. Well, the arbitrator thought it was a motion because he called it a motion. But anyway, go ahead. Ms. Tillman has been clear from the start that she did not have the funds to pursue a long, drawn-out case-in-a-case proceeding. And although the arbitrator has ruled the request, ruled the case within a case process inapplicable, which is wrong, Ryan Gold has managed to elongate these proceedings. And the receiving sentence is important. Please accept this letter as our request that claimant Ryan Gold Velay be ordered to pay the cost of arbitration going forward. At this point, this is in August of 2012. The arbitration has been going on two years. Plaintiffs already $18,000 in arrears on the initial deposit. They haven't paid. They aren't up to date. They made an initial payment of $10,000 to start the case, and then extensive work was done to develop orders, to make motions, many of which, really several important ones, were denied for the plaintiff. They made a motion to switch the location of their arbitration from New York to Los Angeles, the exact thing they wanted when they opposed arbitration in the first place. That motion was denied. There was a separate motion and many conference calls discussing how the case would be formatted and whether aspects of it would be done under the case-within-a-case format, which is mandatory for attorney malpractice actions. The arbitrator most certainly did order that the case-within-a-case process would be applied for the real meat of the case. In the end, he didn't decide the motion. There was a request that there be an order to Reingold to pay, and he didn't decide it. I still say that a proper motion was never presented. He never said it because it wasn't a proper motion. He said, I'm not going to decide the motion. Because they were not in place. Let's assume those are the facts. What do we do with it then? I still think it's a very non-obvious solution at that point. If an arbitrator-I mean, he has some right and decide, and they're not paying me. I shouldn't have to decide anything, I gather, is his position, including whether Reingold should pay or not. And on the other hand, the net result-on the other hand, he does have the authority to ask Reingold to pay or to make Reingold pay, and he's saying, I'm not even going to think about that. So is there anything a court should or could or would do about that? After the fact, I don't believe the court has the ability to go back and order the arbitrator to go do something differently. There are several cases making that exact point. But the court could itself then say, well, if the arbitrator is not going to decide motions, then we should just do it ourselves. I mean, suppose an arbitrator said, you know, I'm just not-I'm not-the case is before me, but I'm not going to decide it. What happens then? That's a different case, but in this- Of course it's a different case. That's why it's hypothetical. If the court is refusing to decide, then I'm not sure what you do. I think there are other aspects of the AAA rules that might apply. You could ask for a different arbitrator. If an arbitrator is abdicating his or her duties, that seems an extreme example. Could she have gone to the AAA and said, tell this arbitrator to decide this motion, he has to at least decide it? I don't think that would be inappropriate. And I think there are aspects of the AAA rules that allow a replacement of an arbitrator if they are abdicating their duties. And that's sort of what the hypothetical the court provides sounds like. But what we have and what we are dealing with and what the district court had to deal with was the fact that the order most certainly terminated, first suspended and then terminated the arbitration due to the plaintiff's nonpayment of fees in the- Isn't that an order that would be subject to change if the court found an abuse of discretion or that the arbitrator was exceeding his authority? Abuse of discretion or exceeding the authority are not the standards that the district court can deal with to affirm an arbitration award. It has to be, and I'm trying to find the actual language here, something to the effect of clearly outside of the bounds of the arbitrator's authority. And here in this context we have the law firm admitting liability, right? Absolutely not. Now let me clarify that because that's been repeated several times. Even though it's not perhaps relevant to what we're doing, I still like it just for the optics. Liability was not really as easy as they seem to think. Yes, there was a determination that for purposes of the arbitration, a duty to join the unknown or the previously unknown minor plaintiff fell upon both the law firm and the wife. That duty existed. However, liability wasn't automatically created for that. You still have to have proximate causation and damages resultant from that. That was highly in doubt because of what is derisively called the offset issue, but which is actually a very important issue. Remember, this is a wrongful death case. Renee Tillman was the wife. As an heir, her loss of earnings and loss of other claims was based largely upon the salary, the lost salary of the decedent, Timmy Tillman. That salary is, for lack of a better phrase, a fixed amount. Under the California statutes, the judge and or the jury would then determine, depending on the number of heirs, who got how much of that fixed amount. Because Sean Tillman, the unknown son from the first marriage, wasn't included in the underlying trial, by definition Renee Tillman got the money that Sean Tillman would have received or should have received. She got a windfall, and the arbitrator discussed that precisely. She got the windfall, so if Sean Tillman, after his settlement with Freightliner, still had a claim against Renee or the law firm or anyone for that, well, that money was already in Renee's pocket. There is an offset to be had for that. Can we go back to the LifeScan opinion? Yes. It appears that your opponent is partially right about what happened in LifeScan. It appears that what happened in LifeScan is that one party, I think it was the plaintiff, said that they couldn't pay, so that's parallel to here. And the arbitrators gave LifeScan the option of advancing the fees. Did not order them, but gave them the option, with the expectation that LifeScan could recruit the advance as part of any award. And they refused. And then the arbitration was suspended. Now, so far, that seems quite parallel to this, with the exception that there wasn't an express option to pay the fees, but the option exists in the rules, and the option obviously existed. That is, that Rheingold could have paid fees, right, up until that point. So it seems quite parallel. And then LifeScan goes to the district court and says, order the premier to pay the prorated share of the fees, and the court says, well, a court can't do that. Instead, it should dismiss the petition. So then what? My notes have it that the court changed its initial order and actually ordered LifeScan to pay its half the fees. I could be dead wrong, and your clerks are probably smarter than I am. I'm not the clerk. I read my own opinions. I'm reading it to you in English. The arbitrators gave LifeScan the option of advancing the fees owed by the premier so the final arbitration hearing could proceed, with an expectation that LifeScan would recoup the advance. LifeScan refused and requested the AEA decline to proceed without premier and suspended the proceedings. That's what this says. All right, so what I want to know is the same option existed here. There was no payment made. I understand that the district court couldn't order Rheingold to pay, but could it essentially suspend its order to arbitrate at that point? That seems to be what happened in LifeScan. I don't know exactly what happened in LifeScan in the end. It seems like the case just died, I guess. LifeScan only goes so far. The arbitration was suspended because of the nonpayment of fees. The case went up on the motion, so they were subject to the opinion, and then we don't know what happened. Presumably the arbitrator and or the parties worked out whatever it is they worked out and the case was resolved. I still say that the opinion says that the order was changed. But regardless, if there was an order, an actual piece of paper from the arbitrator saying, Rheingold, pay these fees. You will be responsible to pay these fees going forward. I just read a sentence saying there wasn't. Isn't that exactly parallel? Under your scenario, that would be. But also true is the fact that there is nothing in the request to pay the fees alleviating the obligation of Renee Tillman to pay her fees. It might have been a joint obligation at worst. That does not mean that Renee Tillman was not in default in her agreement. She had defaulted by not paying. At no point was her obligation to pay ever lifted. Therefore, when it got to the district court, the basis for the dismissal or the termination of the arbitration was the fact that Renee Tillman had not paid her share of the fees. And again, these are fees going back well before these orders and the request, if you will, for Rheingold to pay the fees was ever made. They were already $18,000 in arrears. And again, I do not concede the point that the letter from a lawyer is really an adequate request of the arbitrator to make a big fee-shifting arrangement. Let me just ask you one more generic question and then you're out of time. Neither of you have been arguing this case on the premise that there is any as to whether the inability to pay is a reason not to arbitrate. And I gather that you don't think we should be addressing that question in this case. Ability or inability to pay is a question that the case law says lies within the exclusive jurisdiction of the arbitrator. That is part of the overall decision as to who makes fees. There is a parametric language in certain opinions saying that the order to arbitrate may not be appropriate if one of the parties can't actually pay the fees. I don't know if it's ever been done, but there is a parametric language out there, usually in cases with federal statutory issues rather than state issues, but it's out there. But it doesn't appear to be really being raised in this case as such. As even the district court pointed out, if there was an inability to pay so that you shouldn't go to arbitration in the first place, the time to point that out is in opposition to the petition to compel arbitration. The district court. The opposition is I could pay up to a point and then I couldn't pay. That's why you need to lay that out to the arbitrator. If you really can't pay, you lay that out in the district court in the motion to compel arbitration. The order might be affected by it. That request was never made here, never made. When the arbitrator got the case, the issue of inability to pay didn't really come into it until several months and years later after many decisions had been made. Payments had been made. But again, I do not concede that this letter from a lawyer is really enough to put the issue in play. Well, what's the difference? I mean, suppose it were. Your position would still be the same, I take it. Well, if you presented the motion and the court or rather if the arbitrator decided it, then we would know. Presumably, if he presented the motion and he says, I'm not going to decide it, which is what happened here. He called it a motion. He said, I'm not deciding it. So that's what whether it's he didn't say because it was procedurally improper. He said, because I'm not going to decide it again. This was after they were already eighteen thousand dollars. He may have been right. And I mean, maybe you want to say and maybe you should say he implicitly denied it. But he didn't deny it because it was because it was a letter, not a motion. I mean, you're getting sidetracked. If he's not deciding the issue, it's because they are already technically in default by eighteen thousand dollars. That seems to be why he wasn't deciding it. Anyway, you're out of town. But thank you very much. Thank you, Your Honors. I recognize I'm out of time. I'll give you one minute. Yes. Thank you, Your Honors. The only point I think, given the amount of time I've already taken, is to point out that at page 52 of the excerpt of record is the notation by the arbitrator that he did give claimant, did give Reingold the opportunity to pay the fee, just as in life scan. And as to the final question you asked, as to that issue, we certainly contend that arbitration should never have been ordered. We didn't have the chance to raise that argument. At the time the matter was put into arbitration, my client had money. She ran out of money scoring victory after victory in arbitration. And every time we'd win, they'd ask for more time. I mean, you know, I understand there's a finding that she couldn't pay. But it is a little peculiar that she couldn't pay the arbitrator, but she can pay her lawyer to litigate a great length that she shouldn't have to arbitrate after. She didn't pay us, Your Honor. You'll see in the record that we actually advanced her first fee because she was out of money. Her second fee is in the record. And you could have had the second one too, except you didn't want to arbitrate. Well, we, having not been paid for the client, we also didn't have the money. We wanted to arbitrate. We had already won the case. Thank you, Your Honor. All right. Thank you. The case of Armstrong, no, Tillman v. Reingold is submitted, and we will take a short break.
judges: Gould, Berzon, Steeh